IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DAVID COUNCIL,                    )          Civil No. 07-105-JE
                                  )
              Plaintiff,          )          FINDINGS AND
                                  )          RECOMMENDATION
        v.                        )
                                  )
MICHAEL ASTRUE,                   )
Commissioner of Social Security,  )
                                  )
              Defendant.          )
_____   )

        Rory Linerud
        P.O. Box 1105
        Salem, OR 97308

              Attorney for Plaintiff

        Karin J. Immergut
        U.S. Attorney
        Britannia I. Hobbs
        Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

David J. Burdett
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98014-7075

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff David Council brings this action pursuant to 42 U.S.C. §§ 405 (g)  seeking review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§1381-1383f.  The Commissioner's decision should be reversed, and this action should be remanded to the agency for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI benefits on October 1, 2003, alleging that he had been disabled since 1992 because of obesity, diabetes, cartilage damage in his feet and knees, nightmares, hallucinations, difficulties walking, exhaustion, and limited sleep.  Following denial of the application initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

On June 8, 2006, a hearing was held before ALJ Ralph Jones.  Plaintiff, who was represented by counsel, testified at the hearing.  Kay Wise, a Vocational Expert (VE), also testified.

In a decision filed on July 6, 2006, ALJ Jones found that plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on November 20, 2006, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff seeks review of that decision.

## FACTUAL BACKGROUND

Plaintiff was born on December 13, 1968, and was 37 years old at the time of the hearing before the ALJ. He has a high school education, and has past work experience as a keno writer/runner in a casino, a mushroom buyer, a senior services driver, and an in-home caregiver. He has been unemployed since 2003. Plaintiff is approximately 5'6" tall, and testified that he weighed approximately 430 lbs. at the time of the hearing.

## MEDICAL RECORD

Plaintiff has been diagnosed with a number of conditions. These include congenital cavus deformity of both feet, plantar fascitis, type II diabetes mellitus, adjustment disorder with mixed anxiety and depressed mood, obstructive sleep apnea, probable central alveolar hypoventilation of obesity, morbid obesity, depression/anxiety, degenerative arthritis, hypertension, tinnitus, hearing loss, malaise with mildly elevated WBC, suicidal ideation, hypertrophic changes anteriorly off the tibia, and mildly concentric left ventricular hypertrophy.

## HEARING TESTIMONY

At the hearing before the ALJ, plaintiff testified that he suffers from diabetes, obesity, degenerated cartilage in his feet and knees, nightmares, hallucinations, pain throughout his body, chronic fatigue, inability to sit or stand for extended periods, irritability and drowsiness because of low blood sugar, depression, and sleep apnea. He testified that he can stand for only brief periods because he experiences pain in his back and knees, his knees buckle, and his legs and arms go to sleep. Plaintiff testified that he needs to lie down frequently because his feet, legs, and hands go to sleep when he sits for more than a few minutes.

The ALJ posed a hypothetical to the VE describing a 37 year old individual with a high school education plus two years of college, plaintiff's past work experience, the residual functional capacity to occasionally lift 50 pounds and frequently lift 25 pounds, and the ability to stand six hours, sit six hours, and walk six hours in an eight hour work day. The VE testified that all of plaintiff's past relevant work had been performed at a light duty level or less, and that an individual described by the hypothetical could perform all of plaintiff's past relevant work.

The ALJ posed a second hypothetical in which standing and walking were limited to two to three hours during an eight-hour day, and sitting was limited to six hours. The VE testified that these limitations would eliminate the Keno runner position, but would allow the hypothetical individual to perform plaintiff's past work as a driver, caregiver, and cashier. In response to further questioning by the ALJ, the VE testified that an individual weighing as much as plaintiff testified he weighed at the time of the hearing could not perform plaintiff's past relevant work as a keno runner. She further testified that work as a cashier or caregiver would not be precluded, and that the ability to work as a driver would not necessarily be

eliminated, but would depend on whether "adjustments to the seat and the steering and so forth were somewhat accommodating."

In response to questioning by plaintiff's counsel, the VE testified that a worker's need to lay down during a shift at other than normal break times would preclude competitive employment.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not

meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

FINDINGS AND RECOMMENDATION - 6

## ALJ'S DECISION

At the first step of his disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.

At the second step, the ALJ found that plaintiff's diabetes, morbid obesity, and dysthymic disorder were "severe" impairments, and that plaintiff's "alleged disintegrative cartilage of feet and knees, and diagnosed sleep apnea," were "non-severe" impairments.  In reaching this conclusion, the ALJ noted that plaintiff's "alleged 'disintegrative cartilage of his feet and knees' " was not supported by the medical record, that the physician who diagnosed congenital cavus deformity had prescribed orthotics which had apparently resolved the problem, and that plaintiff's sleep apnea had resolved with the use of a "C-Pap machine."

At the third step, the ALJ found that, alone or in combination, plaintiff's impairments did not meet or medically equal an impairment in the "listings," 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  In reaching this conclusion, the ALJ noted that, based upon testing and an interview, Dr. Star, a psychologist, had found that plaintiff could follow directions, remember what he had heard, engage in abstract thinking, and make common sense decisions.  He also noted that reviewing psychologists had concluded that plaintiff had no cognitive work restrictions.  He further noted that a consultative psychological evaluation and treatment records indicated that plaintiff's mental disorder resulted in no restriction of activities of daily living, caused only mild difficulties in maintaining social functioning and mild limitations in maintaining concentration, persistence, and pace, and had resulted in no episodes of decompensation.  The ALJ cited plaintiff's activities of daily living, which included regular visits with friends, card playing, and volunteer activities, as evidence that plaintiff "is not one

who either has a complete inability to function outside the area of his home or is likely to decompensate from a minimal increase in mental demands."

The ALJ noted that plaintiff's most significant physical impairment was "obesity which has resulted in his secondary impairment of Type II diabetes." The ALJ concluded that this condition did not meet listing 9.08 because that listing required "specific consequences from diabetes mellitus in order for this impairment to be considered disabling," and the symptoms of "out of control diabetes" had not materialized. The ALJ added that, though obesity was "no longer a presumed disabling Listing category," he had taken plaintiff's obesity into consideration in determining his residual functional capacity.

At the fourth step, the ALJ found that plaintiff retained the functional capacity "to perform medium work defined as lifting 50 pounds occasionally, frequently lifting 25 pounds, the ability to sit, stand, or walk 6 hours out of 8 hours, unlimited ability to push or pull, and no cognitive or postural limitations." Based upon this assessment, the ALJ opined that plaintiff had testified that he had "significantly greater limitations" than those found by the ALJ. The ALJ cited a number of limitations to which plaintiff testified, and found that plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." In support of his credibility determination, the ALJ noted that plaintiff was able to socialize with friends for several hours at a time, observed that plaintiff's treating physician, Dr. Bump "does not share the claimant's self assessment of his limited capacity to work," and opined that plaintiff's testimony that he could not follow his physician's recommendations because of financial limitations did not "make common sense." He added that plaintiff was "evasive and less than forthcoming regarding his work activities" and "had trouble providing direct answer[s] to questions about work."

In support of his assessment of plaintiff's residual functional capacity, the ALJ cited an evaluation by Dr. Bump dated December 18, 2003, indicating that plaintiff could walk or stand 2 to 3 hours and could sit 6 hours during an 8 hour day, and could lift 50 pounds occasionally and 25 pounds frequently. Dr. Bump indicated that these restrictions were based upon plaintiff's complaints.[1] The ALJ stated that, as the opinion of a treating physician, Dr. Bump's assessment was entitled to "significant evidentiary weight." He concluded, however, that the opinion was "undermined to the extent that Dr. Bump's walking and standing restriction is not based on objective medical findings," and concluded that the opinions of reviewing Drs. Jensen and Pritchard, who found no restrictions in plaintiff's ability to walk or stand, were "a more accurate reflection of the treatment records and testing" because these doctors "were able to review all of the claimant's treatment records, not just those from his primary care physician."

Based upon his assessment of plaintiff's residual functional capacity and the VE's testimony, the ALJ concluded that plaintiff could perform his past relevant work as a "keno rider [sic], personal driver, mushroom buyer and home health care aide as the claimant performed these jobs and as these jobs are performed in the national economy." Accordingly, he found that plaintiff was not disabled within the meaning of the Social Security Act.

---

[1]As noted below, Dr. Bump opined that plaintiff's restrictions were much more pronounced in a statement he signed on June 14, 2006, a few days after the hearing before the ALJ.

**STANDARD OR REVIEW**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**DISCUSSION**

Plaintiff contends that the ALJ erred by failing to recognize the extent of the limitations imposed by his morbid obesity; erred in relying on an outdated opinion of his treating physician, and ignoring a current opinion of that same physician; erred in his

interpretation of the VE's testimony; erred in concluding that plaintiff's dysthymic disorder did not result in work-related restrictions; erred in failing to provide adequate reasons for finding plaintiff less than fully credible; and erred in failing to fully develop the record concerning the effects of plaintiff's morbid obesity and mental impairments.  Based upon these errors, plaintiff asserts that this action should be remanded for an award of benefits or for further proceedings.

For the reasons set out below, I agree that this action should be remanded.  Though the ALJ's conclusion that plaintiff is not disabled is not supported by substantial evidence in the record, because of certain gaps in the record, it is not possible to determine with confidence whether benefits should be awarded.  Accordingly, the action should be remanded for further proceedings.

1. Severity of limitations imposed by plaintiff's morbid obesity, development of the record, and opinion of treating physician

As noted above, in evaluating the effect of plaintiff's morbid obesity on his residual functional capacity, the ALJ accepted the assessments of reviewing Drs. Jensen and Prichard, who opined that plaintiff could sit 6 hours, stand 6 hours, or walk 6 hours during an 8 hour period,  had an unlimited ability to push or pull, and had no postural limitations.  These limitations were less restrictive than those assessed by Dr. Bump, plaintiff's treating physician, long before the hearing, and reflected opinions formed at a time when there is evidence that plaintiff weighed significantly less than he weighed at the time of the hearing.  Drs. Prichard and Jensen formed their opinions in March, 2004, more than two years before the hearing, at a time when it appears plaintiff may have weighed 50 pounds less than he weighed at the time

of the hearing, and their opinions were based upon medical records indicating that plaintiff weighed significantly less than he weighed in June, 2006, when the hearing was held.  Though the ability to accurately determine plaintiff's weight was compromised by his physician's lack of a sufficiently robust scale, it appears that plaintiff weighed approximately 380 pounds in 2003, and there is evidence that he weighed approximately 430 pounds in June, 2006, when the hearing was held.

In relying on the opinions of reviewing Drs. Jensen and Prichard, the ALJ rejected in part Dr. Bump's assessment of December, 2003, which opined that plaintiff's restrictions were somewhat more severe than those assessed by the reviewing doctors.  The ALJ premised his preference for the opinions of the reviewing doctors on the dubious proposition that, unlike plaintiff's treating physician, these doctors had been able to review all of plaintiff's treatment records, not simply the treating physician's own records.  Given that he had treated plaintiff since 1992, and referred frequently in his chart notes to treatment plaintiff received from other medical sources, Dr. Bump was in a far better position than reviewing doctors to accurately assess plaintiff's limitations.

An opinion Dr. Bump expressed a few days <u>after</u> the hearing, which is not discussed in the ALJ's decision, raises significant questions as to whether the ALJ's evaluation of plaintiff's capabilities accurately assessed plaintiff's residual functional capacity at the time of the hearing and decision.  As noted above, the hearing before the ALJ was held on June 8, 2006. In a letter dated June 14, 2006, plaintiff's counsel asked Dr. Bump to review the following statement concerning plaintiff's condition and indicate whether, based upon his examinations of plaintiff over time, he believed that the statement accurately reflected plaintiff's "conditions and limitations," and whether plaintiff's "limitations are due to his impairments."

At Mr. Council's Social Security hearing, David advised that he had great
difficulty because of his obesity and other conditions.  He explained that when
he sits for roughly 20 minutes, his hands and legs become numb and go to
sleep.  He also explained that he has severe and chronic fatigue that limits him
in virtually all activities.  Mr. Council further stated that because of his obesity,
he can stand or walk for roughly 10-15 minutes at a time.  However, because of
these problems, he also needs to rest and lay down periodically through the
day.  David has explained that his weight has increased over the last few years,
which made his symptoms worse.

Dr. Bump checked a blank indicating his agreement with the statement, signed the

letter, and dated his signature June 14, 2006.

The ALJ's reliance on the assessment of reviewing doctors Jensen and Prichard, and

the absence of any significant discussion of Dr. Bump's agreement with the above statement in

his decision, raise significant issues concerning the adequacy of the record on which the ALJ

based his decision, and as to the basis for disregarding the opinion of a treating doctor.  Given

the evidence that plaintiff weighed significantly more at the time of the hearing than he did

when the medical records on which the reviewing doctors based their opinions were created, it

is not clear that the ALJ could reasonably rely on those opinions in analyzing plaintiff's

residual functional analysis.  There is no indication that the ALJ considered this weight

difference, or obtained medical evidence that would allow him to accurately determine how

gaining as much as 50 pounds would or would not affect plaintiff's limitations and his ability

to perform past relevant work.

An ALJ has a duty to further develop the record when the evidence is ambiguous or is

inadequate to allow for proper evaluation.  E.g., Widmark v. Barnhart, 454 F.3d 1063, 1068-

69 (9th Cir. 2006); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Here, I

conclude that the ALJ erred in failing to obtain medical evidence concerning plaintiff that

considered plaintiff's weight at the time of decision, and in failing to fully address the impact of plaintiff's morbid obesity on his ability to perform work activities.

In a footnote in his decision finding that plaintiff was not disabled, the ALJ noted that Dr. Bump had "ascribed to" the description of his limitations that plaintiff presented at the hearing. The ALJ rejected the opinion reflected by Dr. Bump's signature on the June 14, 2006 letter as "contradicted by Dr. Bump's treating records," and asserted that plaintiff's testimony "was eroded by his evasiveness about his activities" as noted elsewhere in the decision.

The ALJ's failure to support his dismissal of Dr. Bump's agreement with the statement of limitations set out in the June 14, 2006 letter is significant, because the opinions of treating physicians are given greater weight than are the opinions of other physicians. E.g., Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). Accordingly, an ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Here, the ALJ failed to support his rejection of Dr. Bump's most recent opinion concerning plaintiff's limitations with specific, legitimate reasons that are supported by the record. A broad citation to asserted but unexplained contradictions with Dr. Bump's treating records and a general assertion that plaintiff was evasive as to his activities are not sufficient to support the rejection of Dr. Bump's most recent opinion concerning plaintiff's limitations.

Because the ALJ did not develop the record concerning plaintiff's limitations after he appears to have gained as much as an additional 50 pounds, and did not provide the required support for his rejection of the opinion of plaintiff's limitations Dr. Bump provided a few days

FINDINGS AND RECOMMENDATION - 14

after the hearing, the Commissioner's conclusion that plaintiff is not disabled must be reversed.

Though reversal is required, further proceedings on remand are needed because it is not clear from the record before the court whether a finding of disability is appropriate. It appears that Dr. Bump's agreement to the statement of limitations set out in the June 14, 2006 letter, if accepted, would require a finding of disability. However, given the conclusory nature of the June 14, 2006 statement and its inconsistency with Dr. Bump's assessment dated December 18, 2003, further inquiry into the basis of Dr. Bump's opinion, and a more detailed appraisal of plaintiff's limitations and impairments, is needed. On remand, the agency should obtain a more detailed analysis from Dr. Bump, request an explanation of the difference in Dr. Bump's assessment of December 18, 2003, and his agreement with the description of plaintiff's limitations set out in the June 14, 2006 letter, and obtain any other medical evidence that may be needed to accurately assess the limitations caused by plaintiff's weight at the time of this reassessment.

Though this action should be remanded for these reasons, I will also briefly address other issues plaintiff has raised so that all of the relevant issues can be addressed on remand.


2. Credibility assessment

An ALJ is responsible for determining credibility. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because it is unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)

(*en banc*).  Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

In evaluating a claimant's credibility, the ALJ may consider: (1) ordinary methods of credibility evaluation, including the claimant's reputation for veracity, prior inconsistent statements concerning symptoms, and other testimony by the claimant that reflects upon the claimant's credibility; (2) unexplained or inadequately explained failure to seek treatment or follow a course of treatment prescribed; (3) the claimant's daily activities; (4) objective medical evidence; (5) opinions from medical sources; (6) the location, duration, frequency, and intensity of symptoms; (7) precipitating and aggravating factors; (8) the type, dosage, effectiveness, and side effects of medications; (9) treatment other than medication; and (10) statements from the claimant and others regarding the claimant's symptoms and limitations. 20 C.F.R. § 404.1529(c); Smolen v. Chater, 80 F.3d 1273, 1284-85 (9th Cir. 1996).

The ALJ found that plaintiff's statements concerning his symptoms and limitations were not wholly credible.  As noted above, the ALJ stated that plaintiff was "evasive and less than forthcoming regarding his work activities," and "had trouble providing direct answer[s] to questions about work."  In support of his assessment of plaintiff's credibility, the ALJ cited plaintiff's "ability to get together with friends . . . to play cards (at which times snacks and sodas are consumed) and to do other activities for two to three hours at a time."  The ALJ stated that plaintiff's treating physician did not share plaintiff's assessment of his "limited capacity to work," and opined that plaintiff's assertion that he ate burgers and fries because they were less expensive than the fruits and vegetables that doctors recommended did not make "common sense."

Here, there is medical evidence that plaintiff's obesity is a significant underlying impairment that causes symptoms, and there is not evidence that plaintiff is malingering. Accordingly, the ALJ was required to provide clear and convincing reasons for rejecting plaintiff's testimony as to the severity of his symptoms.

The reasons provided do not meet that standard. The ability to play cards for a few hours at a time with friends is not inconsistent with plaintiff's testimony about the severity of his symptoms, and the consumption of "snacks and sodas" during these events does not discredit plaintiff's testimony. Though plaintiff's testimony may have been somewhat inconsistent with the assessment made by his treating doctor a few years earlier, it was not inconsistent with the opinion that doctor affirmed a few days after the hearing at which plaintiff gave the testimony that the ALJ found was not fully credible.

A careful reading of the complete transcript of the hearing before the ALJ does support the conclusion that plaintiff has an unusual work history, and that his work as a volunteer driver, mushroom buyer, and caregiver is not easily categorized or quantified. However, the transcript does not support the ALJ's assertion that plaintiff was evasive about his work activities and unable to provide direct answers about work. Any difficulty responding to questions about work appears to result more from the unusual nature of the few jobs plaintiff has managed to perform than from plaintiff's alleged "evasiveness."

As noted above, this action should be remanded for further proceedings. If my recommendation to remand is adopted, on remand the ALJ should either provide the required clear and convincing reasons for discrediting plaintiff's testimony, or accept that testimony as credible.

3. <u>Plaintiff's dysthymic disorder</u>

_____Plaintiff contends that, having concluded that plaintiff's dysthymic disorder constituted a "severe" impairment, the ALJ erred in "later finding that no restrictions resulted from the impairment."

I disagree.  As the Commissioner notes, the ALJ evaluated plaintiff's psychiatric status under the technique set out at 20 C.F.R. § 404.1520a, and  reviewed the opinion of examining psychologist David Starr, M.D., which did not indicate that plaintiff had cognitive work limitations.  The ALJ noted that reviewing psychologists Henry and Anderson had also concluded that plaintiff had no cognitive work restrictions, and that plaintiff's mental disorder results in no restriction of activities of daily living, only mild limitations in maintaining concentration, persistence, and pace, and no episodes of decompensation.  This record provided substantial evidence supporting the ALJ's decision to not include in his RFC assessment any specific restrictions resulting from plaintiff's dysthymic disorder.


4. <u>ALJ's interpretation of VE's testimony</u>

In his decision, the ALJ stated that the VE

> opined claimant's obesity, from a vocational standpoint, does not preclude working although the claimant testified this impairment is the primary reason for him being unable to work.

Plaintiff contends that this statement does not accurately reflect the VE's testimony.  I agree.   The ALJ asked the VE whether, accepting plaintiff's weight as that to which he testified at the hearing rather than that when plaintiff allegedly became disabled, "the current weight in and of itself precludes" performance of plaintiff's past relevant work.  In response, the VE testified that the keno runner position would be eliminated, and that the ability to work

as a driver "would not necessarily be ruled out because of weight," but would depend on the steering and seat adjustments being "somewhat accommodating." The VE testified that the ability to work as a caregiver would depend on having "the flexibility to lie down, sit and stand and move about and still take good care and watch over and so forth that's acceptable." She further testified that the cashier position could be performed with a "level of accommodation" allowing the individual to work for two hours with a sit and stand option before a break, and would depend on the ability to "continue through the entire day."

The VE did not unequivocally testify that "claimant's obesity" did not preclude work. Instead, when asked to accept that plaintiff's weight at the time of the hearing was significantly greater than it had been earlier, the VE testified that one previous position would be eliminated, and that the ability to perform other work would depend on the availability of certain "accommodations."

## CONCLUSION

For the reasons set out above, a judgment should be entered reversing this action and remanding this case to the agency for further proceedings. On remand:

1. the agency should obtain a current and more detailed assessment of plaintiff's condition from Dr. Bump, should seek an explanation of the different opinions Dr. Bump previously provided, and should obtain any other medical evidence needed to accurately assess plaintiff's current residual functional capacity;

2. an ALJ should either credit plaintiff's testimony about the severity of his symptoms and limitations, or should provide a legally sufficient basis for not crediting plaintiff's testimony; and

FINDINGS AND RECOMMENDATION - 19

3.  an ALJ should not construe the VE's earlier testimony as indicating that an individual of plaintiff's height who weighed approximately 430 pounds could necessarily perform plaintiff's past relevant work.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due May 8, 2008.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 22nd day of April, 2008.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge